IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MAGDALENA FLORES-GAYTAN,** | ) | |
| Individually and as the | ) | |
| Administrator of the Estate | ) | |
| of **JOSE ROMO-VIRAMONTES,** deceased; | ) | |
| ᔆ ℛ-ᖴ | ) | **Case No.** 10-CV-2538 RDR/KGS |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, by and through | ) | |
| Her next friend, **MARIA ISABEL ROMO**; and | ) | |
| ℬℛ-ᖴ | ) | |
| ▓▓▓▓▓▓▓▓▓ by and through | ) | |
| his next friend, **MARIA ISABEL ROMO** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **3M COMPANY,** | ) | |
| **THE SHERWIN-WILLIAMS COMPANY,** | ) | |
| **CSD, INC.,** | ) | |
| **STARTEX CHEMICAL, INC.,** | ) | |
| **THE HOME DEPOT, INC.,** | ) | |
| **HOME DEPOT U.S.A., INC., and** | ) | |
| **STEVEN G. GALATE, d/b/a UNIVERSAL** | ) | |
| **POWER WASH** | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT 3M COMPANY'S
## NOTICE OF REMOVAL

Defendant 3M Company ("3M"), by and through its undersigned counsel, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby notifies this Court that it is removing the above-captioned action currently pending in the District Court of Wyandotte County, Kansas (the "State Court"), docketed there as Case No. 10CV1385 (the "State Court Case"), to the United States District Court for the District of Kansas. In support of this Notice Of Removal, 3M states:

1

## OVERVIEW

1.      Plaintiffs are Kansas citizens who filed this suit in the State Court against seven Defendants, all of whom except Defendant Steven Galate ("Galate") are citizens of states other than Kansas.  Plaintiffs allege that all named Defendants are responsible for the wrongful death of their decedent Jose Romo-Viramontes (the "Decedent").  Against all of the Defendants except Galate, Plaintiffs assert numerous products liability claims based on the Decedent's alleged use of certain products in a residential painting project and that such uses allegedly caused the Decedent's death.  Plaintiffs' only claim against Galate is for allegedly negligently violating an alleged duty to provide the Decedent a reasonably safe work environment.

2.      However, Galate is an independent contractor who did not occupy, possess, or control the residence in question and owed the Decedent no duty of care.  Thus, Galate was improperly joined in this action by Plaintiffs for the sole purpose of defeating diversity of citizenship jurisdiction.

## PROCEDURAL HISTORY AND BASIS FOR REMOVAL

*S R-F the Decedent's daughter,*

3.      Plaintiffs Magdalena Flores-Gaytan ("Flores-Gaytan"), ▮▮▮▮▮▮
*B R-F the Decedent's son,*
by and through her next friend Maria Isabel Romo, and ▮▮▮▮▮▮▮▮▮▮ by and through his next friend Maria Isabel Romo ("Plaintiffs"), initiated this action against Defendants 3M, The Sherwin Williams Company ("Sherwin-Williams"), CSD, Inc. ("CSD"), Startex Chemical, Inc. ("Startex"), The Home Depot, Inc. ("Home Depot"), Home Depot U.S.A., Inc. ("Home Depot U.S.A."), and Galate, by filing their Complaint For Damages (the "Complaint") in the State Court on or about August 26, 2010.  3M Company received service of process on September 3, 2010.  Thus, this Notice Of Removal is timely filed with this Court following 3M's receipt of Plaintiff's Complaint, as required by 28 U.S.C. § 1446(b). Fed. R. Civ. P. 6(a) (stating that when the last day of a any prescribed filing period falls on a Saturday or Sunday, the time

period continues to run until the next day that is not a Saturday or Sunday); see also King v. Knoll, 399 F.Supp.2d 1169, 1173 n13 (D. Kan. 2005) (holding that the defendants timely removed and obtained consent because since the thirtieth day of the time for proper removal fell on a Sunday, the defendants had until the following Monday to remove); cf. Searles v. Dechant, 393 F.3d 1126, 1129 (10th Cir. 2004) (holding that because the 30 day limit on filing the plaintiff's appeal fell on a Saturday, the plaintiff had until Monday to file the appeal).

4.      Attached to this Notice Of Removal as Exhibit A are copies of all documents filed or served in the State Court Case, and a copy of the docket sheet in the State Court case as Exhibit B.

5.      The basis for this removal of this case to this Court is diversity jurisdiction pursuant to 28 U.S.C. § 1332, because (1) there is complete diversity of citizenship between Plaintiffs on the one hand and Defendants 3M, Sherwin-Williams, CSD, Startex, Home Depot, and Home Depot U.S.A., on the other, and (2) the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

6.      As required by 28 U.S.C. § 1441, 3M removes the State Court Case to this Court, which is the district court embracing the place where Plaintiffs initiated the State Court Case.

7.      Defendant Sherwin-Williams consents to the removal of this action.  See Exhibit C, a copy of Defendant The Sherwin-Williams Company's Consent To Removal.

8.      Defendant Home Depot consents to the removal of this action.  See Exhibit D, a copy of Defendant The Home Depot, Inc.'s Consent To Removal.

9.      Defendant Home Depot U.S.A. consents to the removal of this action.  See Exhibit E, a copy of Defendant Home Depot U.S.A., Inc.'s Consent To Removal.

10.    Improperly named Defendant Galate, specially appearing and without waiving any argument as to whether he was properly named, consents to this removal. See Exhibit F, a copy of Defendant Steven G. Galate's Consent To Removal.

11.    Consent for removal is not required of Defendants CSD and Startex, because neither has been served in the action seeking to be removed. See 28 U.S.C. § 1446; First Nat. Bank & Trust Co. in Great Bend v. Nicholas, 768 F.Supp.788, 790 (D. Kan. 1991) (holding that, as judicially interpreted, 28 U.S.C. § 1446 only requires the consent of defendants who have been served in the action seeking to be removed); Cohen v. Hoard, 696 F.Supp. 564, 566 (D. Kan. 1988).

12.    In accordance with 28 U.S.C. § 1446(d), 3M is providing written notice to Plaintiffs by serving this Notice of Removal on their counsel.

13.    In accordance with 28 U.S.C. § 1446(d), 3M will promptly file a copy of this Notice Of Removal with the Clerk of the District Court of Wyandotte County, Kansas.

14.    A copy of the civil coversheet for this case is attached as Exhibit G.

### DIVERSITY OF CITIZENSHIP

15.    Plaintiffs are citizens and residents of Kansas. Complaint ¶¶ 2, 5.

16.    Defendant 3M is a Delaware corporation with its principal place of business in Saint Paul, Minnesota. Complaint ¶ 7.

17.    Defendant Sherwin-Williams is an Ohio company with its principal place of business in Cleveland, Ohio. Complaint ¶ 8.

18.    Defendant CSD is a Texas corporation with its principal place of business in Conroe, Texas. Complaint ¶ 9.

19.     Defendant Startex is a Texas corporation with its principal place of business in Conroe, Texas.  Complaint ¶ 10.

20.     Defendant Home Depot. is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Complaint ¶ 11.

21.     Defendant Home Depot U.S.A. is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Complaint ¶ 12.

22.     Defendant Galate is a resident of Kansas.  See Complaint ¶ 13.  However, Plaintiffs' attempted joinder of Galate as a Defendant in this action cannot defeat the diversity jurisdiction of this Court, because Plaintiffs improperly joined Galate for the sole purpose of defeating diversity jurisdiction.

### PRIOR RELATED LITIGATION

23.     This is the third lawsuit filed by Plaintiff Flores-Gaytan based on the death of the Decedent.

24.     Plaintiff Flores-Gaytan filed her first lawsuit, encaptioned Magdalena Flores-Gaytan v. 3M Company, Masterchem Brands, Inc., Masterchem Industries, LLC, The Home Depot, Inc., and Home Depot U.S.A., Inc. in the Circuit Court of St. Louis County, Missouri, on April 26, 2010, in her individual capacity, requesting relief for the alleged wrongful death of Decedent based on product liability claims.  Galate was not a named defendant in that action.  Plaintiff Flores-Gaytan voluntarily dismissed that action without prejudice on July 14, 2010.  See Exhibit H, a copy of the complaint in that case, and Exhibit I, a copy of the dismissal of that case.

25.     Plaintiff Flores-Gaytan also filed a lawsuit, encaptioned Magdalena Flores Gaytan v. Steven G. Galate, d/b/a Universal Power Wash in the District Court of Johnson

County, Kansas, on June 18, 2010, requesting relief (1) in her individual capacity for wrongful death and (2) as the administrator of the Decedent's estate for conscious pain and suffering experienced by the Decedent. Galate was the only named defendant in that action. That lawsuit was dismissed without prejudice on July 26, 2010. See Exhibit J, a copy of the complaint in that case, and Exhibit K, a copy of the dismissal of that case.

## IMPROPER, PRETENSIVE, AND FRAUDULENT JOINDER

### Applicable Law

26.     Under well-established principles of federal law, a plaintiff may not destroy a defendant's right of removal by fraudulently or improperly joining a resident defendant against which the plaintiff has no legitimate claim. See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); see also Cooper v. Zimmer Holdings, Inc., 320 F.Supp.2d 1154, 1156-57 (D. Kan. 2004).

27.     When determining whether a non-diverse party has been fraudulently joined, district courts must examine whether the underlying state claim has any reasonable basis. Chicago, Rock Island, & P. Rwy. Co. v. Whiteaker, 239 U.S. 421, 425 (holding that proving fraudulent joinder of a party requires a showing that the claim against that party is "without any reasonable basis"); Dodd v. Fawcett Publ'n, Inc., 329 F.2d 82, 85 (10th Cir. 1964); Nerad v. AstraZeneca Pharm., Inc., 203 F. App'x. 911, 913 (10th Cir. 2006) (holding that "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant"). In other words, fraudulent joinder exists if a plaintiff could not establish a cause of action in state court. Cooper, 320 F.Supp. 2d at 1157; Storlien v. Weigand, No. 05-1283-JTM, 2006 WL 3068878, at *2 (D.Kan. Oct. 25, 2006) ("[f]raudulent

joinder exists if a plaintiff would be <u>unable to establish a cause of action</u> against the joined defendant in state court") (emphasis added).

28.     When an allegation of fraudulent joinder has been made, a district court may pierce the pleadings and consider the record and any related affidavits, and otherwise determine validity of the joinder by any means necessary. <u>Dodd</u>, 329 F.2d at 85.

29.     In this case, Kansas law precludes a cause of action against Galate, because (a) Galate was an independent contractor hired by homeowners Pamela and Scott Burgett to perform a small remodeling project; and (b)(1) Galate did not occupy, possess, or control the Burgett home during the remodeling, and (2) Galate did not control or have the right to control the conditions causing the Decedent's death.  Thus, Galate did not owe the Decedent a duty to keep the Burgetts' residence in a reasonably safe condition.  See <u>Wilson v. Daytec Const. Co.</u>, 916 P.2d 72, 74 (Kan Ct. App. 1996) (holding that the general contractor did not occupy, possess or control the premises and did not owe injured party a duty to keep the premises reasonably safe).

30.     Under Kansas law, to hold a defendant liable for failure to keep premises in a reasonably safe condition, the defendant must be the owner, occupier, or possessor of the premises.  <u>Summers v. Montgomery Elevator Co.</u>, 757 P.2d 1255 (Kan. 1998); <u>Hall v. Quivira Square Dev. Co.</u>, 675 P.2d 931 (Kan. Ct. App. 1984).  A "possessor of land" is defined as "one who is in the occupation of the land with the intent to control it." <u>Gragg v. Wichita State Univ.</u>, 934 P.2d 121, 130 (Kan. 1997) (citing <u>Restatement (Second) of Torts</u> § 328(e) (1964); <u>see also</u> <u>Summers</u>, 757 P.2d at 1255; <u>Hall</u>, 675 P.2d at 931.

31.     In their Complaint, Plaintiffs allege that Galate is liable to them for negligence because "Defendant Galate was the occupier or possessor of the premises and intended to control

it for the purposes of completing the project." See Complaint ¶ 110.  Plaintiffs further allege

Galate had a duty to keep the jobsite in a reasonably safe condition and that Galate breached that

duty by failing to provide for adequate ventilation, failing to provide Decedent with proper

equipment to work on the premises, failing to properly supervise the premises and the work

being done by the Decedent, and otherwise failed to ensure that the premises were in a

reasonably safe condition for use by the Decedent. See Complaint ¶¶ 111-12.

      32.      In determining whether a general contractor is in possession of the premises, with

intent to control it, Kansas courts look at several factors, including:

> i.      The contractor's ability to restrict access to the premises, even as to the owner. See Miller v. Zep Mfg. Co., 815 P.2d 506, 513 (Kan. 1991).

> ii.      Whether the contractor has taken responsibility for the building until it is completed. Anderson v. Siemen's Westinghouse Power Corp., No. 01-4121-SAC, 2002 WL 31928492 at *6 (D. Kan. 2002) (citing Miller, 815 P.2d at 513) (holding that defendant did not owe plaintiff a duty of care as to the flooring installed since he had no control over when the flooring should be replaced and owner of the premises had complete control over the premises).

> iii.      Whether the contractor actually established barriers or barricades on the premises. Miller, 815 P.2d at 513.

> iv.      The amount of time the contractor spends on the premises while work is being completed. Wilson, 916 P.2d at 74 (holding that contractor did not "occupy with intent to control" since no evidence illustrated he was constantly present on the premises while work was performed).

      33.      Moreover, no duty of reasonable care exists if the defendant has no right of

control over the specific condition causing the injury.  Schmelzle v. Wal-Mart, Inc., 230

F.Supp.2d 1254, 1259-60 (D. Kan. 2002) (interpreting Kansas law); Gragg, 934 P.2d at 130;

Rogers v. Omega Concrete Sys., Inc., 883 P.2d 1204, 1207-08 (Kan. Ct. App. 1994) (holding

that Omega owed no duty to maintain the safety of a railroad crossing because, although Omega

was allowed to use the private road where the crossing was located, it had no right or authorization to control its maintenance). In other words, if a defendant has no right to control the conditions of a project, the defendant could not cause or create any hazardous conditions, nor does the defendant have the ability to correct those conditions. Schmelzle, 230 F.Supp.2d at 1260; Rogers, 883 P.2d at 1207. As such, the defendant owes no duty of reasonable care. Schmelzle, 230 F.Supp.2d at 1260; Rogers, 883 P.2d at 1207.

## Relevant Facts

34. As established by the Declaration Of Defendant Steven G. Galate ("Galate Declaration"), a copy of which is attached hereto as Exhibit L, (a) Galate did not occupy, possess, or control the premises at issue; (b) Galate did not supervise, direct, or control, nor have the right to supervise, direct, or control, the manner in which the Decedent carried out his work; and (c) Galate did not control any conditions at those premises allegedly causing or contributing to the Decedent's death.

35. Galate is the owner of Universal Power Wash and Painting, LLC, which primarily performs residential painting and remodeling projects. See Galate Declaration at ¶ 2.

36. In June 2008, Galate was hired as a general contractor to perform a small remodeling project at the residence of Pam and Scott Burgett at 8415 W. 145th Street, Overland Park, Kansas (the "Remodeling Work"). The Remodeling Work involved remodeling an upstairs closet at the Burgett residence. Id. at ¶ 4.

37. Galate subsequently retained the Decedent, a commercial painter, as a subcontractor to perform the Remodeling Work. As part of the Remodeling Work, Mr. Romo-Viramontes also was responsible for painting the closet (the "Painting Project"). Galate paid Mr. Romo-Viramontes on a lump sum basis. Id. at ¶ 5.

38.     During the Remodeling Work, the Burgetts remained in control of their residence and continued to occupy their residence during the Remodeling Work.  Id. at ¶ 6.

39.     Galate was not the occupier or possessor of the Burgett residence; and he had no intent to control the Burgett residence for purposes of completing the Remodeling Work. Furthermore, Galate did not take any affirmative steps or take or accept responsibility for the Burgett residence during the Remodeling Work.  Galate had no authority or ability in connection with the Remodeling Work to grant, restrict, or otherwise control access of other persons to the Burgett residence; and he did not grant, restrict, or otherwise control access to that residence by other persons. Id. at ¶ 7.

40.     Mr. Romo-Viramontes was provided his own access to the Burgett residence to carry out the Remodeling Work through the use of the Burgetts' garage door access code.  Id. at ¶ 8.

41.     Galate did not instruct or direct Mr. Romo-Viramontes as to any equipment he should use on the Remodeling Work generally or the Painting Project specifically; and Galate did not instruct or direct Mr. Romo-Viramontes as to the manner in which he should perform any of that work.  Id. at ¶ 9.

42.     Mr. Romo-Viramontes supplied his own tools and equipment to carry out the Remodeling Work and was responsible for all aspects of the Remodeling Work.  Galate did not have the right to supervise, direct, or control the manner in which Mr. Romo-Viramontes carried out the Remodeling Work; and Galate did not attempt to supervise, direct, or control the Remodeling Work.  Id. at ¶ 10.

43.     More specifically, Mr. Romo-Viramontes was responsible for all aspects of the Painting Project and supplied his own tools and equipment for use to carry out the Painting

Project.  Galate did not have the right to supervise, direct, or control the manner in which he carried out that work; and Galate did not attempt to supervise, direct, or control that work.  Id. at ¶ 11.

44.     As of June 27, 2008, the Remodeling Work was essentially complete, except for the Painting Project and the installation of carpet in the closet.  Id. at ¶ 12.

45.     Mr. Romo-Viramontes was working alone on the Painting Project on June 27, 2008.  Mr. Romo-Viramontes was responsible for and did perform all painting preparation work, including but not limited to installing plastic sheeting across the doorway of the closet.  Id. at ¶ 13.

46.     Galate did not establish any barriers or install the plastic sheeting for the Painting Project; and Galate did not supervise or instruct Mr. Romo-Viramontes as to the manner in which he should paint the closet, erect the plastic sheeting, ensure adequate ventilation of the closet, or otherwise carry out the Painting Project.  Id. at ¶ 14.

47.     Galate was present at the Burgett residence at approximately 6:00 p.m. on June 27, 2008.  At that time, Mr. Romo-Viramontes was preparing the closet for painting.  At approximately 8:30 p.m. that evening, Galate briefly stopped by the Burgett residence, at which time Mr. Romo-Viramontes was painting the closet.  Galate was not present at the Burgett residence thereafter until after Mr. Romo-Viramontes' death.  Id. at ¶ 15.

48.     Galate owed Plaintiffs' Decedent no duty of care, because (a) Galate was not the owner, occupier, or possessor of the Burgett residence; (b) Galate did not supervise, direct, or control, nor have the right to supervise, direct, or control, the manner in which the Decedent carried out his work; and (c) Galate did not control any conditions at the Burgett residence that allegedly caused or contributed to the Decedent's death.  See Anderson, 2002 WL 31928492 at

*6.   Consequently, no remedy for Plaintiffs exists at law for Plaintiffs' claim against Galate. Therefore, Plaintiffs have no reasonable basis in fact or law to assert a claim against Galate.

49.      Thus, Plaintiffs' fraudulently joined Galate in this lawsuit to destroy diversity of citizenship of the parties.

50.      Accordingly, this removal is proper pursuant to the Court's diversity jurisdiction. 28 U.S.C. §§ 1332, 1441.

## AMOUNT IN CONTROVERSY

51.      Plaintiffs do not specify an amount of damages in their Complaint.  However, a defendant may remove a suit to federal court notwithstanding the failure of the plaintiff to plead a specific dollar amount in controversy.  See McPhail v. Deere & Co., 529 F.3d 947, 955 (10th Cir. 2008).  Where, as here, a plaintiff alleges no specific amount of damages, a removing defendant need only prove to a reasonable certainty that the amount in controversy exceeds the jurisdictional amount.  Coca-Cola Bottling of Emporia, Inc. v. South Beach Beverage Co., 198 F.Supp.2d 1280, 1285 (D. Kan. 2002).

52.      Plaintiffs seek unspecified damages for the wrongful death of the Decedent. Plaintiffs aver sixteen different counts against seven Defendants under their wrongful death claim.  See Complaint.  For each count, Plaintiffs request damages "in excess of $75,000." While summarily requesting $75,000 may not satisfy the amount in controversy burden, the sheer number of counts Plaintiffs allege under the wrongful death cause of action demonstrates to a reasonable certainty that the amount requested will exceed $75,000.

53.      In addition to her wrongful death claim, Plaintiff, Flores-Gaytan, on behalf of the Decedent's estate, seeks damages in an amount "in excess of $75,000" for the pain and suffering allegedly caused Decedent before his death.

54.     Because Plaintiffs seeks damages on sixteen separate counts for wrongful death and a seventeenth count claiming pain and suffering, it is reasonably certain that the amount in controversy in the above-captioned action exceeds $75,000.

## CONCLUSION

55.     In summary, because (1) there is complete diversity of citizenship between Plaintiffs and the Defendants not fraudulently joined; (2) Galate has been fraudulently and improperly joined and therefore is not a proper party to this action; (3) Plaintiffs are seeking damages in excess of the $75,000 jurisdictional threshold; and (4) this Notice Of Removal is timely filed, 3M may remove this action pursuant to 28 U.S.C. §§ 1332 and 1441.

**WHEREFORE,** 3M gives notice that the above-captioned action is removed from the District Court of Wyandotte County, Kansas to the United States District Court for the District of Kansas for the exercise of jurisdiction over this action as though this action had originally been instituted in this Court.

Dated:  October 4, 2010

Respectfully submitted,

/s/W.C. Blanton

| W.C. Blanton | KS # 22834 |
| Stephen J. Torline | KS # 18292 |

Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Ph.: (816) 983-8000
Fax: (816) 983-8080
Email: wc.blanton@huschblackwell.com
       stephen.torline@huschblackwell.com

**ATTORNEYS FOR DEFENDANT
3M COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that true and accurate copies of the foregoing document, **Defendant 3M Company's Notice Of Removal** were mailed via first class U.S. Mail, postage prepaid, this 4th day of October, 2010, to:

Robert C. Sullivan
Sullivan, Bautista, Morgan, Allen & Chronic
1600 Baltimore Avenue, Suite 200
Kansas City, MO 64108
**ATTORNEY FOR PLAINTIFFS**

Carlton D. Callenbach
Armstrong Teasdale LLP
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri  64108
**ATTORNEY FOR DEFENDANT THE**
**SHERWIN-WILLIAMS COMPANY**

Jeffrey Southard
Abbott, Davidson & Southard
1100 Walnut Street, Suite 2950
Kansas City, Missouri l 64106-2109
**ATTORNEY FOR DEFENDANT**
**STEVEN G. GALATE**

/s/Stephen J. Torline
Stephen J. Torline
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112